# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

DEXTER WAYNE CLEMONS,       )
                               )

          **Plaintiff,**         )

                               )     **Civil Action No. 3:10-01085**
     **v.**                     )     **Judge Wiseman / Knowles**

                               )
MICHAEL J. ASTRUE,         )
**Commissioner of Social Security**   )

                               )
          **Defendant.**      )


## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13. Plaintiff has filed a Reply. Docket No. 14.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I.  INTRODUCTION

Plaintiff filed his applications for DIB and SSI on September 12, 2007, alleging that he had been disabled since August 20, 2006, due to obesity, diabetes, high blood pressure, and bronchitis.  Docket No. 10, Attachment ("TR"), TR 107-11, 112-14, 135.  Plaintiff's applications were denied both initially (TR 51-52, 53-54) and upon reconsideration (TR 55-56, 57-58).  Plaintiff subsequently requested (TR 71-72) and received (TR 25-50) a hearing.  Plaintiff's hearing was conducted on December 29, 2009, by Administrative Law Judge ("ALJ") John R. Daughtry.  *Id.*  Plaintiff and vocational expert ("VE"), Gary Sturgill appeared and testified.  *Id.*

On January 19, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 8-19.  Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2010.
>
> 2.  The claimant has not engaged in substantial gainful activity since August 20, 2006, the alleged onset date of disability (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: obesity, osteoarthritis (knees), history of bronchitis, diabetes mellitus with some neuropoathy (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range [of] sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except

2

that that [*sic*] the claimant has the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 2 hours in an 8 hour workday with normal breaks; sit for up to 6 hours in an 8 hour workday with normal breaks; does require a sit/stand option at will; can occasionally climb stairs/ramps, balance, stoop, kneel, crouch, or crawl; should not climb ladders, ropes, scaffolds; and should avoid concentrated exposure to pulmonary irritants.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Born on March 24, 1961, the claimant was 45 years old on August 20, 2006, which is defined as a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 20, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 13-18.

On March 11, 2010, Plaintiff timely filed a request for review of the hearing decision.

TR 7. On September 17, 2010, the Appeals Council issued a letter declining to review the case

(TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g)

3

and 1383(c)(3).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different

4

conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (citing *Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

5

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 CFR 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

---

[1] The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

6

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) finding that Plaintiff retained the residual functional capacity ("RFC") to perform a range of sedentary work, with some exceptions; (2) failing to consider the medical opinion of treating internist Dr. John B. Bassel, submitted one day after the hearing, but three weeks before the ALJ's decision was rendered; (3) accorded improper weight to the opinion of non-examining, non-treating State Agency physician Dr. Susan Warner; (4) discounting Plaintiff's credibility regarding his subjective complaints and limitations; (5) improperly considering Plaintiff's obesity and its effects on his ability to work; (6) failing to properly evaluate Plaintiff's mental conditions and limitations; and (7) relying on the vocational expert ("VE") testimony.  Docket No. 12-1.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id.*

Sentence four of § 405(g) states as follows:

7

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Residual Functional Capacity

Plaintiff maintains that the ALJ erred in finding that he retained the residual functional capacity ("RFC") to perform a range of sedentary work, with some exceptions. Docket No. 12-1, at 9-10. Specifically, Plaintiff contends the ALJ "mischaracterized" his RFC by stating that his RFC was for sedentary work, but including the ability to lift/carry 20 pounds occasionally and 10 pounds frequently as an exception because that ability is in the definition of light, not sedentary, work. *Id.*, *citing* 20 CFR 404.1567(b) and 416.967(b). Plaintiff also argues that the ALJ's hypothetical question required a sit/stand option at will, which directly conflicts with the characteristics of sedentary work and with the DOT definition of the same. *Id.* Plaintiff additionally argues that, "most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions," which he would be unable to do because of the diabetic contracture in his hands. *Id.*

8

Defendant responds that the ALJ properly considered all of the medical evidence when making his RFC determination, clearly explained his findings, and based his decision on substantial evidence. Docket No. 13, at 12-13. Regarding the alleged "mischaracterization," Defendant contends that Plaintiff's argument is "purely semantic," because the ALJ found that Plaintiff was capable of performing a range of sedentary work, *with some exceptions*, rather than simply a range of sedentary work. *Id.* Defendant contends that the ALJ, accordingly, found that Plaintiff was capable of performing a range of work between sedentary and light, such that any exceptions that exceeded the baseline for sedentary work were not contrary to the ALJ's RFC finding. *Id.* With regard to Plaintiff's argument that the diabetic contracture in his hands would prevent him from working, Defendant argues that the ALJ's RFC finding was supported by the opinions of Drs. Chaudhuri and Warner, who found that Plaintiff had no manipulative limitations, and by Dr. Bassel, who opined that Plaintiff could "continuously handle, finger, and feel." *Id.*

Plaintiff replies that the ALJ's "mischaracterization" is not semantics, but rather, is "a failure by the ALJ to follow SSA regulations, which prejudiced [him] on the merits." Docket No. 14, at 1-2. Plaintiff also replies that Defendant's reliance on Dr. Bassel finding that Plaintiff could "continuously handle, finger, and feel" is misplaced because "those would only involve sensations, whereas Dr. Bassel also opined that [Plaintiff] can only occasionally reach overhead and only occasionally push/pull with his right hand," and because Dr. Bassel ultimately opined that Plaintiff was "totally and permanently disabled from engaging in any substantial gainful employment." *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the

9

individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's residual functional capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR 404.1545(b).

With regard to Plaintiff's RFC, the ALJ in the case at bar ultimately determined:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range [of] sedentary work as defined in 20 CFR 404.1567(b) and 416.967(b) except that that [*sic*] the claimant has the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 2 hours in an 8 hour workday with normal breaks; sit for up to 6 hours in an 8 hour workday with normal breaks; does require a sit/stand option at will; can occasionally climb stairs/ramps, balance, stoop, kneel, crouch, or crawl; should not climb ladders, ropes, scaffolds; and should avoid concentrated exposure to pulmonary irritants.

TR 13-14.

Plaintiff is correct that the ability to lift/carry 20 pounds occasionally and 10 pounds frequently is an ability necessary for light, not sedentary, work. *See* 20 CFR 404.1567(b) and 416.967(b). The ALJ observed, however, that Plaintiff's ability to perform all or substantially all of the requirements of light work had been "impeded by additional limitations." TR 18. For instance, the ALJ stated:

10

> The combined effect of obesity with osteoarthritis of the knee
> impacts the claimant's ability to ambulate, but it is determined that
> he retains the ability to do so for at least 2 hours during an 8 hour
> workday and it would not significantly impact his ability to
> perform work activities at a sedentary range of exertion.

TR 16.

As will be discussed in greater detail below, the record in the case at bar is replete with

doctors' evaluations, medical assessments, and test results, all of which were properly

considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity

on a regular and continuing basis." The ALJ, after evaluating all of the testimonial and objective

evidence of record, including Plaintiff's reported level of activity, determined that Plaintiff

retained the RFC to perform a range of sedentary work with specific exceptions. TR 13-17. For

the reasons to be discussed, this determination was proper.

On November 2, 2007, Dr. Bruce A. Davis performed a consultative examination of

Plaintiff. TR 14, 239. Upon examination, Dr. Davis opined that Plaintiff had: metabolic

syndrome; chronic obesity; elevated blood pressure treated with medication; elevated blood fats

treated with medication; diabetes mellitus treated with oral medication; cigarette associated

bronchitis with shortness of breath; cough treated with inhaler bronchodilator and cigarette

cessation with physician visits; and suspected sleep apnea with nighttime and daytime

complaints. *Id.* Additionally, Dr. Davis observed the following objective medical evidence:

Plaintiff's heart had no enlargement, murmur, gallop, or click; 1+ lower leg edema; mild

shortness of breath with exam maneuvers but clear breath sounds; no clubbing or cyanosis; back

pain with normal thoracolumbar flexion, hip flexion, straight leg raising; knee pain with crepitus

but normal flexion/extension, and slow squatting. *Id.* In his decision, the ALJ noted that Dr.

11

Davis had not expressed an opinion regarding Plaintiff's functional limitations. *Id.* The ALJ also observed that there was "very little treatment and no significant evidence suggesting that the claimant's physical condition has worsened since Dr. Davis's examination." TR 14.

In December 2007, State agency physician Dr. Kanika Chauduri reviewed Plaintiff's medical records, and opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; perform unlimited pushing/pulling; and frequently climb, balance, stoop, kneel, crouch, and crawl. TR 17, 240-47. Dr. Chauduri found no evidence that Plaintiff experienced any manipulative, visual, communicative, or environmental limitations. *Id.* Dr. Chauduri noted that Plaintiff was "partially credible" and was noncompliant with his medication for poorly controlled diabetes mellitus. *Id.* She noted that she had considered his obesity, and summarized Plaintiff's treatment evidence of record. *Id.* Upon reviewing Dr. Chauduri's findings, the ALJ determined that they were "overly optimistic," and therefore accorded them little weight. *Id.*

In May 2008, Dr. Susan Warner completed a Physical Residual Functional Capacity Assessment regarding Plaintiff and opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk about 6 hours in an 8 hour workday; sit about 6 hours in an 8 hour workday; perform unlimited pushing/pulling; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. TR 14-15, 250-55. Dr. Warner opined that Plaintiff did not suffer from any manipulative, visual, or communicative limitations. *Id.* Additionally, Dr. Warner summarized Plaintiff's treatment records, and noted his

12

poorly controlled diabetes mellitus. *Id.* Dr. Warner also noted that she lowered her opined RFC

of Plaintiff in consideration of his morbid obesity. *Id.* The ALJ noted that Plaintiff had "had

very little treatment since Dr. Warner's review," and that there was "no credible evidence

suggesting that [Plaintiff's] level of physical functioning has worsened." TR 15. Accordingly,

the ALJ accorded Dr. Warner's opinion significant weight. *Id.*

> After thoroughly discussing the evidence of record, the ALJ stated:

>> Significant weight is given to the assessment by Dr. Warner at
>> Exhibit 6F, as discussed hereinabove, with further reduction on
>> standing/walking due to claimant's weight and some evidence of
>> osteoarthritis of the knee.

>>> . . .

>> The claimant certainly has some limitations, but should be able to
>> perform work activities at the sedentary level of exertion.

TR 17.

> The ALJ considered the evidence of record, reached a reasoned decision, and clearly

articulated the basis for his RFC finding. The Regulations do not require more.

> Plaintiff also argues that limitations in his manual dexterity due to contracture from

diabetes impede him from performing work in the sedentary range. Docket No. 12-1 at 10. The

Sixth Circuit has noted that "while sedentary occupations require less strength than nonsedentary

jobs, they involve operations that move faster and require more manual dexterity." *Faison v.*

*Secretary*, 679 F.2d 598, 599 (6th Cir. 1982). The medical evidence of record, however, does not

indicate that Plaintiff suffered from manipulative limitations. Both Drs. Chauduri and Warner

found that Plaintiff did not have limitations in reaching, handling, fingering, or feeling. TR 243;

252. Although Plaintiff asserts that, with the exception of reaching, these movements "only

involve sensations" (Docket No. 14 at 2), the opinions rendered by Drs. Chauduri and Warner note that they considered the ability to perform both gross and fine manipulation, along with Plaintiff's ability to feel.[2] TR 243; 252.

As has been discussed, the ALJ properly evaluated Plaintiff's RFC. Because there is substantial evidence in the record to support the ALJ's RFC determination, the ALJ's determination must stand.

## 2.  Consideration of Dr. Bassel's Opinion

Plaintiff maintains that the ALJ erred in his refusal to admit into evidence the opinion of his treating internist, Dr. Bassel, "even though the evidence was submitted only one day after the hearing and three weeks before the decision was written."  Docket No. 12-1 at 11-12.  Plaintiff argues that Dr. Bassel's opinion constitutes new and material evidence and that there was good cause for not including it in the record before the hearing.  *Id.*  Plaintiff additionally contends that the ALJ should have followed the treating physician rule and given Dr. Bassel's opinion greater deference instead of rejecting it because it was inconsistent with the ALJ's opinion. *Id.* at 13. Plaintiff argues that the ALJ used a "canned language" template that does not allow for proper analysis of the parties' arguments. *Id.* at 14. Plaintiff thus argues that remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is warranted to consider Dr. Bassel's records as new evidence submitted to the Appeals Council.  *Id.* at 14-15. Plaintiff reiterates his arguments in his Reply. Docket No. 14.

_____

[2] The physical RFC assessment form completed by Drs. Chauduri and Warner evaluated manipulative limitations including: "handling (gross manipulation)," "fingering (fine manipulation)," and "feeling (skin receptors)."

14

Defendant maintains that the ALJ's decision not to consider Dr. Bassel's opinion was within his discretion since the evidence was admitted after the record had closed. Docket No. 13 at 13-14. Additionally, Defendant argues that Plaintiff has failed to demonstrate that this evidence is material, and that he did not show good cause for failing to include this evidence earlier or request an extension of time for its submission. *Id* at 14-16.

As a preliminary matter, the records from Dr. Bassel at issue are medical records from a visit to Dr. Bassel on December 18, 2009 (TR 272-75), and Medical Source Statements (both mental and physical) from Dr. Bassel dated December 27, 2009 (TR 268-71; 276-81). Plaintiff's hearing occurred on December 29, 2009. TR 25. The records at issue, therefore, were in existence prior to Plaintiff's hearing.

In his Medical Source Statement (Physical), Dr. Bassel opined that Plaintiff could lift up to 10 pounds frequently, and up to 20 pounds occasionally; carry up to 20 pounds occasionally; sit about 4 hours in an 8 hour workday (1 hour without interruption); stand about 2 hours in an 8 hour workday (30 minutes without interruption); walk about 1 hour in an 8 hour workday (15 minutes without interruption); perform continuous handling, fingering, and feeling with both hands; frequently reach with both hands; frequently push/pull with his left hand, but only occasionally with his right; occasionally reach overhead; occasionally stoop; and never kneel, crouch, crawl, balance, or climb. TR 276-81. Dr. Bassel also opined that Plaintiff should avoid concentrated exposure to pulmonary irritants. *Id.* Additionally, Dr. Bassel opined that Plaintiff could ambulate one block on level ground without the use of a cane. *Id.* Dr. Bassel observed no hearing impairments, but noted visual impairments due to Plaintiff's high blood sugar. *Id.*

Plaintiff claims in his brief that these records were not available until the day after the

hearing. Docket No. 12-1 at 11. Plaintiff's brief also states that the records were submitted to the ALJ on December 30, 2009, one day after the hearing, but that the evidence was "rejected" because the record was closed. *Id.* Plaintiff contends that these records constitute new and material evidence that should have been considered, and therefore argues that remand pursuant to Sentence Six for consideration of new and material evidence is warranted. *Id.*

Remand for consideration of new and material evidence is appropriate only when the claimant shows that: (1) new material evidence is available; *and* (2) there is good cause for the failure to incorporate such evidence into the prior proceeding. *Willis v. Secretary*, 727 F.2d 551, 554 (6th Cir. 1984). Plaintiff can show neither.

As an initial matter, Plaintiff cannot establish that Dr. Bassel's records are material. "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Secretary*, 865 F.2d 709, 711 (6th Cir. 1988) (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Plaintiff has failed to satisfy this burden. Plaintiff asserts that this evidence is material because it "proves" that he "cannot perform a full range of work at any exertional level." Docket No. 12-1 at 12. Although Dr. Bassel noted that Plaintiff was "permanently disabled from engaging in any substantial gainful employment" (TR 274), the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled because the definition of disability requires consideration of both medical and vocational factors. *See, e.g., King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). As has been analyzed above, and as will be analyzed in greater detail below, the ALJ thoroughly discussed the medical

and testimonial evidence when determining that Plaintiff was not disabled. Dr. Bassel's opinion is inconsistent with the overall evidence of record, and is conclusory; accordingly the ALJ would not have been bound to accept it and there is no reasonable probability that the ALJ would have reached a different decision had he considered Dr. Bassel's records.

Furthermore, the Appeals Council did receive and review Dr. Bassel's records and nevertheless determined that there was no basis under the Regulations for granting Plaintiff's review. TR 1-3. With regard to Dr. Bassel's opinions, the Appeals Council explicitly stated:

> The Council has considered the opinions of Dr. Bassel contained in Exhibits 9F, 10F, and 11F, and finds that *these opinions are not consistent with the longitudinal record*. In particular, there is no evidence to support limiting the claimant to only four hours sitting in an eight-hour workday, and any difficulty the claimant may have with prolonged sitting is accommodated by the inclusion of a sit/stand option in the assessed residual functional capacity. As for the mental limitations described in Exhibit 9F, the Council notes that the claimant has not alleged mental impairments or limitations (Exhibits 2E, 7E, 10E, hearing testimony) and that Dr. Bassel is not a mental health expert.

TR 2 (emphasis added).

The Appeals Council's findings regarding Dr. Bassel's records further demonstrate that there is no reasonable probability that a different decision would have been reached had Dr. Bassel's records been part of the record for consideration prior to the ALJ's disability determination. he considered Dr. Bassel's records. Accordingly, Plaintiff has failed to establish the materiality of Dr. Bassel's records.

Moreover, Plaintiff has not established "good cause" for failing to submit Dr. Bassel's records to the ALJ during the hearing. "Good cause" can be shown "by demonstrating a

17

reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (*citing Willis*, 727 F.2d at 554).

Plaintiff argues that good cause exists because Dr. Bassel's assessments were not available at the time of the hearing. Docket No. 12-1 at 11. Plaintiff, however, was aware of his visits to Dr. Bassel, which preceded the hearing. He could have petitioned for the record to remain open, for a reasonable time, until he could procure the records from Dr. Bassel. *Willis*, 727 F.2d at 554 (noting that plaintiff's counsel could have sought "to have the record remain open until such time as other evidence could be made a part of the record"). Alternatively, Plaintiff could have petitioned for a continuance of the hearing to allow more time to produce the new medical evidence. *See Cranfield v. Commissioner*, 79 Fed. Appx. 852, 859 (6th Cir. 2003) (rejecting plaintiff's good cause argument because she could have sought a continuance if she needed more time to produce her medical records). Plaintiff did not pursue either of these avenues. In fact, Plaintiff's attorney stated to the ALJ during the hearing that, to his knowledge, the record was complete.[3] TR 28.

Plaintiff has failed to demonstrate that Dr. Bassel's records constituted either new or material evidence, and that there was good cause for his failure to present the new evidence at

---

[3] The following is the exchange between Plaintiff's attorney and the ALJ, as quoted from the trial transcript:

> ALJ - [Counsel,] have you had an opportunity to review the proposed exhibits in this case?
> ATTY - Yes.
> ALJ - And to your knowledge, is the record complete?
> ATTY - Yes.

TR 28.

the administrative hearing. Further, as has been discussed, the evidence was received and considered by the Appeals Council, which nevertheless determined that there was no basis under the Regulations for granting Plaintiff's review. Accordingly, remand pursuant to Sentence Six of 42 U.S.C. § 405(g) is not warranted. Plaintiff's claim fails.

### 3. Weight Accorded to the Opinion of Dr. Warner

Plaintiff maintains the ALJ erroneously accorded improper weight to the opinion of reviewing State Agency physician, Dr. Warner. Docket No. 12-1 at 11-16. Plaintiff argues that instead of according Dr. Warner's opinion "significant weight," the ALJ should have accorded "controlling weight" to Dr. Bassel's opinion because he is a specialist. *Id.* Plaintiff reiterates these arguments in his Reply. Docket No. 14.

Defendant responds that the ALJ properly accorded significant weight to Dr. Warner's opinion. Docket No. 13 at 16-18. Defendant additionally responds that the question of whether Dr. Bassel's opinion deserved controlling weight is "purely hypothetical" because his opinion was not considered by the ALJ. *Id.* Defendant argues that if it had been addressed, however, it would "properly be answered in the negative." *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

> (1) Examining relationship. Generally, we give more weight

to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
. . .

20 CFR 416.927(d) (emphasis added). *See also* 20 CFR 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of

20

Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

As discussed above, Plaintiff's argument regarding consideration of Dr. Bassel's records fails. Additionally, while Plaintiff argues that the opinions of Dr. Bassel deserved controlling weight (Docket No. 12-1 at 15-16), the Appeals Council reviewed his opinions and nevertheless found no reason to revise the ALJ's decision. Accordingly, Plaintiff's argument regarding Dr. Bassel fails.

Regarding the weight accorded to Dr. Warner's opinion, an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has medically determinable impairments. *See Reynolds v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983) (noting that the Regulations permit a judge to consider the opinion of a "service physician"). After thoroughly analyzing the medical evidence of record, the ALJ found that Dr. Warner's opinion was consistent with the overall objective medical evidence, and therefore accorded it significant weight. TR 14-15, 17.

Even in according Dr. Warner's opinion significant weight, the ALJ still reduced her RFC assessment "due to claimant's weight and some evidence of osteoarthritis of the knee." TR 17. The ALJ further reduced Dr. Warner's RFC by reducing Plaintiff's ability to push/pull, including normal breaks in sitting, and including a sit/stand option at will. *Compare* TR13-14 *with* TR 14-15, 250-55. These reductions were proper, and demonstrate (as does the ALJ's four

21

page detailed discussion of the evidence of record) that the ALJ properly considered the evidence as a whole. Substantial evidence supports the ALJ's determination. Plaintiff's argument fails.

### 4. Subjective Limitations/Complaints of Pain

Plaintiff contends that in finding that his subjective complaints were not fully credible, the ALJ did not appropriately address his subjective limitations. Docket No. 12-1 at 18-21. Specifically, Plaintiff argues that the ALJ used a "sit and squirm" test to reject his complaints of pain and that the ALJ dismissed Plaintiff's complaints with a single, conclusory statement without explanation. *Id.* Plaintiff also maintains that Dr. Bassel's opinion contained evidence demonstrating that Plaintiff's level of physical functioning had worsened since Dr. Warner's review of his records.[4] *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints. Docket No. 13 at 20-23. Defendant argues that the ALJ appropriately considered the record as a whole in finding that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his pain were not entirely credible. *Id.* Defendant additionally argues that the ALJ explained these findings in significant detail. *Id.* Defendant reiterates that the ALJ's determination regarding Dr. Bassel's opinion was proper. *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain,

---

[4] For discussion on Dr. Bassel's opinion see *supra* Part III.C.2.

22

> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled . . . ."); and *Moon v.*

*Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations . . . if the subjective allegations,

the ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain . . .do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(construing 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

After reviewing Plaintiff's testimony and the evidence of record, the ALJ determined that Plaintiff's claims regarding the severity of his symptoms were not entirely credible. TR 17. Specifically, the ALJ stated:

> The claimant testified that he had heart problems, arthritis in both knees, obesity, diabetes, and severe back pain. His left leg became numb and shook if he stood for an hour. The calf area was discolored and hard. His legs and feet swelled and he had to elevate them for a couple of hours. He had to change positions frequently and could only sit or stand for brief periods. Claimant had chest pains and irregular heart beat. He weighed 393 pounds at a height of 5 feet 9 inches. He quit smoking 6 or 7 years ago. Claimant had lost his medical insurance and had no money for treatment or medications. He used to take Nitro and pink pills for circulation. Claimant tried to walk half a block to visit his sister. He lived with his 2 daughters aged 19 and 20. Claimant went grocery shopping with his daughter and used a riding cart. He washed dishes but had to put his leg in a chair at the sink. His daughter did the laundry. Claimant attended church every Sunday but had to get up and down during the worship service. He had to use the bathroom frequently up to 10 times during the day and 5 times at night.
>
> . . .
>
> Claimant testified to having heart problems. However, cardiopulmonary examination showed normal heart with no enlargement, murmur, gallop, or click. Stress test resulted in essentially normal findings. Ejection fraction was 58 to 60 percent. Chest x-ray was within normal limits with lungs clear and no definable acute cardiopulmonary process . . . . The claimant retained adequate pulmonary function to perform routine daily activities.
>
> . . .
>
> The findings do not substantiate a basis for an intensity, severity, and frequency of a level of pain that would significantly interfere with work related activities as documented by records from treating sources and examining sources and as evidenced by the

24

claimant's presentation. As discussed in the preceding paragraphs, the objective evidence does not provide a basis for the severity of pain as alleged.

. . .

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms, are not credible to the extent that he has alleged, as documented by records from treating sources and examining sources as discussed in the preceding paragraphs, and as evidenced by the claimant's presentation. It is noted that the claimant has not had insurance since 2008; however there was limited treatment even prior to that date. There is some reference to mild edema in the record, but there is no credible evidence of ongoing treatment for lower extremity swelling that would support the claimant's statement that he has to elevate his legs with the frequency that he has alleged. The medical evidence of record including the physical findings and objective evidence are not persuasive. The claimant certainly has some limitations, but should be able to perform work activities at the sedentary level of exertion.

*Id.*

The ALJ's decision specifically addressed in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly illustrating that these factors were considered. TR 14-17. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (construing 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

25

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (citing *Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (citing *Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

After assessing all the objective medical evidence, the ALJ determined that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent that he had alleged. TR 17. As has been noted, this determination is within the ALJ's province.

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 5. Plaintiff's Obesity

Plaintiff additionally argues that the ALJ erred in not properly considering Plaintiff's obesity and its effects on his ability to work. Docket No. 12-1 at 16-18. Specifically, Plaintiff argues that the ALJ did not consider Plaintiff's testimony regarding his weight and his appearance in making an RFC assessment. *Id.* Additionally, Plaintiff argues that the ALJ failed to properly explain his conclusions and failed to "request any information from the vocational expert regarding any possible effects the claimant's obesity might have on his ability to work." Docket No. 12-1 at 17.

Defendant responds that the ALJ properly considered Plaintiff's obesity. Docket No. 13 at 18-20. Specifically, Defendant states that the ALJ: 1) noted Plaintiff's obesity as a severe impairment; 2) explicitly discussed Plaintiff's obesity in his RFC determination; and 3) discussed medical opinions that had also considered Plaintiff's obesity. *Id.*

Regarding obesity, the Regulations state in pertinent part:

> [W]hen determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 CFR, Pt. 404, Subpt. P, App. 1(1.00)(Q).

Additionally, SSR 02-1p states in pertinent part as follows:

> [O]besity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic

27

work activities. . . .

> There is no specific level of weight or BMI [Body Mass Index]
> that equates with a "severe" or a "not severe" impairment. Neither
> do descriptive terms for levels of obesity (e.g., "severe,"
> "extreme," or "morbid" obesity) establish whether obesity is or is
> not a "severe" impairment for disability program purposes.
> Rather, we will do an individualized assessment of the impact of
> obesity on an individual's functioning when deciding whether the
> impairment is severe.

S.S.R. No. 02-01p (Cum Ed. 2002).

The Regulations require Plaintiff to prove the degree of functional loss resulting from his obesity, as the claimant bears the burden of proof through step four of the five-step sequential evaluation.[5] *Her v. Commissioner*, 203 F.3d 388, 391 (6th Cir. 1999). In the case at bar, Plaintiff fails to cite any medical evidence in the record suggesting an aggravation of his symptoms as a result of his weight beyond those limitations already noted by the ALJ. Docket No. 12-1 at 16-18. Additionally, Plaintiff mentioned his weight only twice at his hearing. TR 27-46. First, Plaintiff noted his weight when specifically asked about it by the ALJ. TR 29. Then, also in response to a direct question posed by the ALJ, Plaintiff mentioned his obesity as a condition that keeps him from being able to work. TR 34-35. Plaintiff did not, however, testify regarding any specific limitations stemming from his obesity. TR 28-46. In fact, Plaintiff's only asserted support is his testimony regarding the functional limitations caused by his arthritis and issues with his legs, specifically his left leg. Docket No. 12-1 at 17. As discussed above, however, the ALJ reached a reasoned decision supported by substantial evidence regarding the credibility of the severity of Plaintiff's alleged limitations.

_____

[5] The determination of a claimant's RFC occurs at step four.

28

Additionally, the ALJ's opinion reflects that he did, in fact, consider Plaintiff's obesity when making his disability determination. The ALJ specifically found that Plaintiff suffered from obesity and that it constituted a severe, medically determinable impairment. TR 13. The ALJ's RFC assessment also explicitly noted Plaintiff's obesity, and the ALJ lowered Plaintiff's RFC specifically because of this impairment. TR 16-17. The ALJ stated:

> The combined effect of obesity with osteoarthritis of the knee impacts the claimant's ability to ambulate, but it is determined that he retains the ability to do so for at least 2 hours during an 8 hour workday and it would not significantly impact his ability to perform work activities at a sedentary range of exertion.
>
> . . .
>
> Significant weight is given to the assessment of Dr. Warner . . . with further reduction on standing/walking due to claimant's weight . . . .

*Id.*

Moreover, the ALJ also considered the reports of Drs. Chauduri and Warner, both of whom listed Plaintiff's primary diagnosis as obesity. TR 14-17; 240; 250. Additionally, both Drs. Chauduri and Warner explicitly noted that they considered Plaintiff's obesity in their RFC assessments. TR 247; 255. In fact, Dr. Warner lowered Plaintiff's RFC in consideration of his "morbid obesity" (TR 255), and the ALJ further reduced Dr. Warner's assessment due to Plaintiff's weight. TR 17.

The ALJ's opinion demonstrates that he reviewed and considered the medical evidence concerning Plaintiff's obesity when determining Plaintiff's functional limitations, and Plaintiff has failed to demonstrate any further effect his obesity has on his abilities. Additionally, the ALJ appropriately posed hypotheticals that accurately represented Plaintiff's determined RFC to the

Vocational Expert for the reasons discussed below. Accordingly, Plaintiff's argument fails.

## 6. Mental Conditions and Limitations

Plaintiff argues that the ALJ failed to correctly evaluate Plaintiff's mental condition and limitations. Docket No. 12-1 at 21-22. Specifically, Plaintiff maintains that the ALJ erred in his failure to mention such conditions or limitations in Plaintiff's RFC or in any hypothetical question to the vocational expert. *Id.*

Defendant responds that the ALJ properly declined to discuss Plaintiff's alleged mental conditions and limitations. Docket No. 13 at 24.

As discussed above, the Regulations require Plaintiff to prove the degree of functional loss resulting from his impairments, as the claimant bears the burden through step four of the five-step sequential evaluation. *Her*, 203 F.3d at 391. To demonstrate the extent of his mental condition and limitations, Plaintiff relies on Dr. Bassel's opinion and on a Seroquel prescription for depression that he self-reported in his Disability Report. Docket No. 12-1 at 21-22; TR 134-40. As discussed above, the ALJ properly decided not to consider Dr. Bassel's opinion.

Additionally, although Plaintiff reported having a Seroquel prescription, he never alleged that any mental impairment limited his ability to work. TR 34-35, 135, 159, and 171. On his September 12, 2007 Disability Report, Plaintiff listed high blood pressure, diabetes, bronchitis, and obesity as the only illnesses, injuries, or conditions limiting his ability to work. TR 135. On his March 21, 2008 Disability Report - Appeal, Plaintiff wrote that he did not have any new physical/mental limitations. TR 159. His last Disability Report, dated July 24, 2008, also asked Plaintiff to indicate any new physical/mental limitations. TR 171. Plaintiff responded: "cannot

walk as far as I could a month or two ago." *Id.* Again, Plaintiff made no mention of any mental limitations. *Id.* Finally, at his hearing, Plaintiff testified as follows:

> ALJ - Tell me in your own words why – what are the primary physical or mental conditions that you've been treated for that you think keep you from being able to work?
>
> A - Well, I've been treated by Dr. Lapolis [phonetic] for my heart. Then Dr. Collins [phonetic] for arthritis in both my knees, and then my obesity by Dr. Collins, and my diabetes.
>
> . . .
>
> ALJ - Okay. Are there other conditions you haven't mentioned?
>
> A - No, sir. Just my back, it hurts especially when I stand.

TR 34-35, 39. Plaintiff did not mention any mental condition or limitations in response to the ALJ's questioning or throughout the remainder of Plaintiff's hearing testimony. TR 25-50.

As noted by the Appeals Council (TR 2) and as exhibited by the evidence above, Plaintiff did not allege, nor can he support, that any mental condition, impairments, or limitations keep him from being able to work; therefore, the ALJ's decision not to discuss any mental conditions or limitations was proper. Accordingly, Plaintiff's argument fails.

## 7. Reliance on Vocational Expert Testimony

Plaintiff also argues that the ALJ erred in relying on the testimony of the vocational expert ("VE"). Docket No. 12-1 at 22-23. Specifically, Plaintiff argues that the VE's testimony was unreliable because the ALJ did not consider Plaintiff's subjective complaints, mental conditions, and mental limitations in determining his RFC, and therefore did not include them in his questioning of the VE. *Id.* Additionally, Plaintiff argues that the ALJ's RFC assessment was improper because Dr. Bassel's opinion was not considered, and therefore, that the ALJ

31

improperly relied on the VE testimony to prove that there was a significant number of jobs that Plaintiff can still perform. *Id.*

Defendant maintains that the ALJ properly relied on the VE's testimony noting that, "[i]n the Sixth Circuit, '[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'" Docket No. 13 at 24, *citing Casey v. Secretary*, 987 F.2d 1230, 1235 (6th Cir. 1993). Defendant then reiterates that the ALJ's decision not to consider Dr. Bassel's opinion was proper. *Id.*

As discussed above, the ALJ's decisions regarding Plaintiff's subjective complaints, mental limitations, and Dr. Bassel's opinion were properly supported by substantial evidence, and the ALJ did not need to further incorporate them into the hypothetical questions he posed to the VE. Moreover, the ALJ's decision specifically addressed Plaintiff's limitations, like his diabetes, arthritis, and back pain. TR 13-17. The ALJ ultimately determined, *inter alia*, that Plaintiff retained the residual functional capacity to perform a range of sedentary work, except that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for up to 2 hours in an 8 hour workday with normal breaks; sit for up to 6 hours in an 8 hour workday with normal breaks; required a sit/stand option at will; could occasionally climb stairs/ramps, balance, stoop, kneel, crouch, or crawl; should not climb ladders, ropes, scaffolds; and should avoid concentrated exposure to pulmonary irritants. TR 13-14. These limitations are supported by the overall evidence of record for the reasons discussed above.

Moreover, the ALJ's hypothetical questions posed to the VE incorporated Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, residual

32

functional capacity for sedentary work with certain exceptions, and postural limitations. See TR

47-49. Specifically, the ALJ asked:

> ALJ -  In the first hypothetical, please assume an individual that can lift and carry 20 pounds on an occasional basis, 10 pounds on a frequent basis. Can stand or walk up to six hours in an eight-hour work period with normal breaks. Can sit for up to six hours in an eight-hour work period with normal breaks. Can engage in unlimited pushing and pulling. And engage in occasional postural activities of climbing stairs and ramps, balancing, stooping, kneeling, crouching, crawling. Should avoid climbing ladders, ropes and scaffolds. Should avoid concentrated exposure to pulmonary irritants. Could such a hypothetical individual perform the Claimant's past work?

> VE -  Yes, Your Honor, very likely.

> ALJ -  All right. Reduction in standing and walking to two hours in an eight-hour work period. Of course, the hypothetical would require sit/stand option. Would that – the rest of the hypothetical remains intact. Would that change – could such a hypothetical individual perform the Claimant's past work?

> VE -  I believe so, Your Honor. I think that would preclude the performance of a production assembler.

> ALJ -  So that would rule out the production assembler. Are there other jobs that such a hypothetical individual could perform?

> VE -  Yes, Your Honor. Let me off[er] you figures for unskilled sedentary work  And these numbers represent persons having limited education. They would include information clerking, numbering approximately 1,000 in the state economy, and approximately 60,000 in the national economy. Interviewers, numbering approximately 600 in the state economy, and approximately 31,000 in the national economy. Hand packagers, numbering approximately 500 in the state economy, and approximately 42,000 in the national economy.

*Id.*

Because the ALJ's hypothetical questions accurately represented Plaintiff's limitations as found credible by the ALJ, the ALJ properly relied on the VE's testimony to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), reh'g denied, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

34